### JARRARD V. THE STATE.

HAWKINS, Justice. Claude Jarrard was indicted, tried, and convicted of the murder of William Turner, and sentenced to electrocution. The defenses relied upon by the defendant were insanity and justifiable homicide, acting under the fears of a reasonable man. To the overruling of his motion for a new trial as amended, based upon the general grounds and 24 special grounds, the defendant excepted. *Held:*

1. No proper foundation having been laid for the introduction of evidence as to the mental condition of the defendant's sister, the exclusion of evidence with reference thereto, as complained of in the first ground of the amended motion for a new trial, was not error. *Hackney v. State,* 206 *Ga.* 64 (55 S. E. 2d, 704).

2. The second ground of the amended motion complains because the trial court permitted the solicitor-general, on cross-examination of the witness for the defendant, to ask the witness if the defendant was drinking at a time when he was at the home of the witness. This was not error in view of the testimony of this witness as to the conduct of the defendant at that time, and upon which the witness had in part predicated his opinion that the defendant was insane. This did not tend to put the character of the defendant in issue, and the ruling complained of was not erroneous for any reason assigned. *Peek v. State,* 155 *Ga.* 49 (3) (116 S. E. 629); *Smith v. State,* 148 *Ga.* 467 (96 S. E. 1042); *Owensby v. State,* 149 *Ga.* 19 (98 S. E. 553). The ruling here made is also applicable in principle to the assignment of error in the third ground of the amended motion for a new trial.

3. Sanity or insanity is a proper subject for opinion evidence, and where the question under examination, and to be decided by the jury, shall be one of opinion, any witness may swear to his opinion or belief, giving his reasons therefor. Code, § 38-1708; *Strickland v. State,* 137 *Ga.* 115 (4), 117 (72 S. E. 922).

4. Ordinarily, the sufficiency of the reasons given by witnesses for their opinion as to a person's sanity or insanity cannot be determined as a matter of law by the court, but is a question for the jury. *Frizzell v. Reed,* 77 *Ga.* 724 (5); *Hubbard v. Rutherford,* 148 *Ga.* 238 (96 S. E.

327); *Pennington* v. *Perry*, 156 *Ga.* 103 (9) (118 S. E. 710); *Espy* v. *Preston*, 199 *Ga.* 608 (34 S. E. 2d, 705).

5. One of the defenses relied upon by the defendant was that of insanity. A non-expert witness offered by the defendant testified: that he had associated with the defendant sufficiently to form an opinion as to his sanity or insanity; that the witness had a conversation with the defendant about a year or year and a half ago; that they talked some little bit; that he could not remember the details of the conversation or the subjects discussed; that, from the way the defendant talked, the witness observed that he didn't talk like he used to; that up to that time he had not noticed anything wrong with the defendant, but that he had known him before and talked with him before, and that he didn't talk then like he had on the last occasion. After stating these facts, the witness was asked by counsel for the defendant to state his opinion as to the sanity of the defendant, whether he was of sound or unsound mind. To this question counsel for the State objected on the ground that "the proper foundation for an opinion on behalf of this witness has not been laid." This objection the trial court sustained and declined to permit the witness to answer the question propounded, and error is assigned thereon in the fifth ground of the amended motion for a new trial. *Held:*

(*a*) Under the preceding rulings, the trial court erred in sustaining the objection urged, and in excluding the testimony offered. The opinion of the witness was admissible, and the weight and credit to be given to it was a question for the jury in the light of the facts given by the witness, upon which the opinion was predicated.

(*b*) The assignment of error in the first ground of the amended motion, based on a similar ruling, shows no cause for reversal, because the witness there detailed additional facts and was allowed to and did express his opinion.

6. The evidence in this case discloses, among other things, that on the date of the homicide, the deceased, together with his father and two brothers, was riding along a public road in an automobile being driven by the deceased; that they passed the defendant, who was walking along the road in the opposite direction; that immediately after passing the defendant, the driver of the automobile stopped the car and began backing it towards the defendant for a distance variously estimated at from a few steps to one hundred yards, the evidence being in conflict as to whether this was done under the impression on the part of the driver that the defendant had made some request of those in the automobile, or whether it was on the initiative of the driver of the automobile without anything being said by the defendant. One of the defenses relied upon by the defendant was that of self-defense, acting under the fears of a reasonable man that his life was in danger or that a felony was about to be committed upon him by the deceased. On the trial, the defendant offered to prove by the witness, Jewell Ingram, that, shortly after the deceased William Turner had separated from his wife, who was the daughter of the defendant, and while the wife of the deceased was living at the home of the witness, William Turner made the statement to the witness "that he didn't like what Claude Jarrard

[the defendant] had done in making him marry his daughter, and now that she was gone, the first time he saw or had an opportunity to get Claude Jarrard, he was going to do it"; and that the witness had communicated this threat to the defendant prior to the date of the homicide. . This testimony as to the threats was excluded on the objection of the solicitor-general. *Held:*

(*a*) Provocation by threats will in no case be sufficient to free the person killing from the crime of murder, or reduce the homicide from murder to manslaughter, when the killing is done solely for the purpose of resenting the provocation thus given (*Cumming* v. *State*, 99 *Ga.* 662, 27 S. E. 177; *Green* v. *State*, 195 *Ga.* 759, 25 S. E. 2d, 502); but, where the killing is claimed to have been done on account of a reasonable fear in the mind of the slayer, threats accompanied by menaces, though the latter do not amount to an actual assault, may in some instances be sufficient to arouse the fears of a reasonable man that his life is in danger, or that a felony is about to be perpetrated upon him. In all such cases the motive with which the slayer acted is for determination by the jury; and if it be claimed that the homicide was committed, not in a spirit of revenge, but under the fears of a reasonable man, it is for the jury to decide whether or not the circumstances were sufficient to justify the existence of such fear. *Cumming* v. *State*, supra; *Willingham* v. *State*, 169 *Ga.* 142 (149 S. E. 887); *Warrick* v. *State*, 125 *Ga.* 133 (53 S. E. 1027).

(*b*) Under the preceding rulings, as applied to the facts of this case, threats made by the deceased against the defendant and communicated to the defendant prior to the killing, were admissible, and the trial court erred in excluding the evidence with reference thereto, as complained of in ground seven of the amended motion for a new trial.

(*c*) The court did not err in excluding self-serving declarations made by the defendant to this same witness with reference to his desire to be carried home by another route because of his expressed fear of the deceased. *Teasley* v. *State*, 202 *Ga.* 316 (2) (43 S. E. 2d, 319).

7. In ground nine of the amended motion error is assigned because the trial court refused to permit to be read to the jury a written statement prepared by counsel for the defendant, counsel stating in his place that "today I cannot put him [defendant] on the stand. He can't talk and I can't use him. I have put down what he has told me. I have seen him three or four times. I haven't been able to talk to him since I have been here this time, and I cannot put him on the stand. I have put down what he has said, and what I have been able to get is very, very slim. He can't read or he can't write." *Held:*

(*a*) "Under the provisions of the Code, § 38-415, relating to the prisoner's statement, a person on trial has the right for his statement to be heard by the jury, and there are instances in which the only means of so doing would be through the voice of another; but rulings upon this privilege must necessarily be vested in the sound legal discretion of the trial judge, whose discretion will not be disturbed unless manifestly abused." *Smithwick* v. *State*, 199 *Ga.* 292 (9) (34 S. E. 2d, 28).

(*b*) It appears from the record that the defendant did later make a short statement to the jury; and since the defendant had been present in court, and the trial judge had an opportunity to observe the demeanor

and conduct of the defendant in the courtroom before, at the time, and after counsel applied to have read as the statement of the defendant what had been prepared and written by counsel, we cannot hold that the trial judge manifestly abused his discretion in declining the request of counsel.

8. While this court has many times held that, in charging on the statement of the defendant in a criminal case, it is the better practice to give to the jury the provisions of the Code with reference thereto, and stop there, a charge substantially the same as that given by the trial judge in the instant case—that "The defendant has made a statement in his own behalf, which he had a right to do. He was not under oath and nobody could ask him any questions. You may give that statement just such weight and credit as you think it is entitled to. You may believe none of it, part of it, or all of it; and if you think it is entitled to that weight and credit, you may believe it in preference to the sworn testimony. How all of that is, is a matter entirely for your consideration, gentlemen"—has been held by this court not to be reversible error. *Willingham* v. *State,* 169 *Ga.* 142 (7) (149 S. E. 887); Code (Ann.), § 38-415, and citations under catchword "Charge."

9. The trial court should have given in charge to the jury the written request to charge set out in ground eighteen of the amended motion for a new trial, that "I charge you that you may consider any evidence, if any has been offered in this case, as to the mental condition of the defendant before and after the offense as tending to show his condition at the time of the offense charged," this request having been timely presented, being authorized by the evidence, and not having been covered by the general charge.

10. The principle of law embodied in the request to charge set out in the nineteenth ground of the motion for a new trial, and the principles of law stated in the twentieth and twenty-first grounds of the amended motion, where applicable, were sufficiently covered by the general charge to the jury.

11. "'An essential element of voluntary manslaughter is passion on the part of the slayer.' *Rentfrow* v. *State,* 123 *Ga.* 539 (2) (51 S. E. 596); *Frazier* v. *State,* 194 *Ga.* 657 (2) (22 S. E. 2d, 404); *Deal* v. *State,* 145 *Ga.* 33 (88 S. E. 573)." *Green* v. *State,* 195 *Ga.* 759 (1) (25 S. E. 2d, 502).

12. "'The unlawful killing of one who has given the slayer no provocation other than the use of words, threats, menaces, or contemptuous gestures cannot be graded as voluntary manslaughter under the doctrine of mutual combat. Code, § 26-1007; *Bird* v. *State,* 128 *Ga.* 253 (57 S E. 320).' *Cone* v. *State,* 193 *Ga.* 420, 428 (18 S. E. 2d, 850)." *Green* v. *State,* 195 *Ga.* 759 (2) (supra).

13. "'Where the evidence introduced by the State made a clear case of unprovoked murder, and the evidence introduced by the defendant and his statement tended to establish that he killed the deceased in self-defense or under the fears of a reasonable man that the deceased was about to commit a felony upon his person, the judge did not err in refusing, on request of the defendant, to give in charge to the jury the law of voluntary manslaughter as related to mutual combat.' *Johnson*

v. *State*, 173 *Ga.* 734 (2) (161 S. E. 590)." *Green* v. *State*, 195 *Ga.* 759 (3) (supra).

14. Under the principles of law quoted in the foregoing 11th, 12th, and 13th headnotes, as applied to the evidence and the defendant's statement, the offense of voluntary manslaughter was not involved in this case, either under the doctrine of mutual combat or otherwise, and the trial court did not err in refusing to charge on that offense, as complained of in the twenty-second and twenty-third grounds of the amended motion for a new trial.

15. All grounds of the amended motion for a new trial not specifically dealt with have been carefully examined. Some of them refer to matters which are not likely to occur on another trial and the others are without merit. For the reasons pointed out in the 5th, 6th and 9th headnotes, the judgment overruling the motion for a new trial was erroneous.

*Judgment reversed. All the Justices concur.*

No. 16842. OCTOBER 12, 1949.

*Joseph G. Collins* and *B. Frank Whelchel*, for plaintiff in error. *Eugene Cook*, Attorney-General, *Jeff C. Wayne*, Solicitor-General, *Frank B. Stow*, Assistant Attorney-General, and *Howard T. Overby*, contra.